1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN PAGE,                              Case No.  14-cv-02870-DMR

                     Plaintiff,
8
                                            **ORDER ON CROSS MOTIONS FOR**
          v.                                **SUMMARY JUDGMENT**
9
                                            Re: Dkt. Nos. 28, 35
10   CAROLYN W. COLVIN,

                     Defendant.
11

12        Plaintiff John Page moves for summary judgment to reverse the portion of the

13   Commissioner of the Social Security Administration's (the "Commissioner's") final

14   administrative decision that denies him disability benefits from January 21, 2011 through June 14,

15   2013.  The Commissioner cross-moves to affirm.  For the reasons stated below, the court grants in

16   part Plaintiff's motion and denies the Commissioner's motion, and remands the action for

17   payment of benefits.

18   **I.      PROCEDURAL HISTORY**

19        Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits

20   under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., on March 21, 2011, alleging

21   disability beginning January 21, 2011.[1]  Administrative Record ("A.R.") 180-84.  His application

22   was initially denied on June 16, 2011 and again on reconsideration on June 19, 2012.  A.R. 118-

23   21, 130-34.  Plaintiff subsequently filed a request for a hearing before an Administrative Law

24   Judge ("ALJ").  A.R. 136-37.  ALJ Amita B. Tracy conducted a hearing on April 30, 2013.  A.R.

25   38-90.

26   _____

27   [1] Plaintiff states that he also applied for Supplemental Security Income ("SSI") benefits under
     Title XVI of the Social Security Act.  Compl. ¶ 2; Pl.'s Mot. 2.  However, there is no application
28   for SSI benefits in the record, and in his disability insurance benefits application, Plaintiff
     specifically indicated "I do not want to file for SSI."  A.R. 180.

United States District Court
Northern District of California

On June 14, 2013, the ALJ issued a decision finding Plaintiff not disabled.  A.R. 16-37.  The ALJ determined that Plaintiff has the following severe impairments: chronic cervical spine strain/sprain and spinal stenosis; chronic sprain/strain of the upper extremities; bursitis; tremor of the right arm; obesity; status post right knee arthroscopy; chronic knee sprain/strain, bilateral; and depressive disorder.  A.R. 21.  The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), but with certain exceptions:

> [Plaintiff] can only lift and or carry 10 pounds, both occasionally and frequently; he can stand and or walk for four hours in an eight hour day; he can never climb ramps, stairs, ladders, ropes, and scaffolds; he can never balance, stoop, kneel, crouch, or crawl; he is limited to frequent overhead reaching, bilaterally; he must avoid exposure to hazards such as moving machinery and unprotected heights; he must use a cane for walking long distances and or on uneven terrain; he is limited to simple, routine, repetitive tasks; and he cannot have any interaction with the public.

A.R. 24.  Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including hand packager, office helper, and small parts assembler, the ALJ concluded that Plaintiff is not disabled.  *See* A.R. 32-33.

The Appeals Council granted Plaintiff's request for review and issued a partially favorable decision on April 16, 2014.  In the decision, the Appeals Council found Plaintiff disabled as of June 14, 2013, the date of the ALJ's decision, "based on a change in age category through non-mechanical application of the age category."  A.R. 1-9.  Specifically, on June 14, 2013, Plaintiff was within six weeks of turning 55 years old, which is advanced age within the meaning of Social Security regulations, which would result in a finding of disability.  *See* 20 C.F.R. § 404.1563.  However, the Appeals Council adopted the ALJ's conclusion that Plaintiff had not been disabled for the period prior to June 14, 2013.  A.R. 5.  Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g), challenging the Commissioner's determination that he was not disabled from January 21, 2011 (his alleged disability onset date) to June 14, 2013.

## II.     THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him or her from engaging in substantial gainful

activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he or she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

United States District Court
Northern District of California

1    claimant is disabled.

2    20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

3    **III.    FACTUAL BACKGROUND**

4        **A.  Plaintiff's Testimony**

5        Plaintiff testified to the following information.  Plaintiff was born in 1958.  A.R. 45.  He is

6    married and lives with his wife and two of his four children.  A.R. 45-46.  He is six feet tall and

7    weighs 282 pounds.  A.R. 46.

8        Plaintiff has not worked since January 2011.  A.R. 47.  From 1996 to 2003, Plaintiff

9    worked for the Office Depot.  Until 1999, he worked as a delivery driver, lifting 50 to 100 pounds,

10   until he hurt his arm and neck at work.  A.R. 50-52.  From 2000 to 2003, he worked four to six

11   hours per day in Office Depot's dispatch office.  A.R. 52, 53.  Office Depot accommodated him by

12   giving him a proper chair and arm rest, and allowing him to take four to five extra breaks lasting

13   five to ten minutes every shift.  A.R. 54-55.  As part of his dispatching job, Plaintiff did some

14   limited typing.  A.R. 56-57.  Plaintiff was laid off in 2003.  A.R. 55.  From 2005 to 2011, he

15   worked at a nursing home as a "driving laundry deliverer," doing laundry and delivering laundry

16   to another building.  A.R. 48-49.  In that job, he lifted up to 75 pounds.  A.R. 49.  His neck pain

17   was exacerbated by bending over the laundry bins, and by March 2010, Plaintiff was missing three

18   days of work per month.  He subsequently reduced his hours to four days per week because he

19   could not handle the pain.  A.R. 68, 69.  He returned to work after knee surgery in January 2011,

20   but his employer was not able to offer him modified duty so he resigned.  A.R. 47-48.

21       Plaintiff testified that he has cervical stenosis in his neck and spinal stenosis in his back,

22   and experiences severe chronic pain from his head to his shoulder.  A.R. 58.  Plaintiff testified that

23   he would not be able to perform a job where he had to look at a computer screen because he can

24   only hold his head in a certain position for five to ten minutes at a time.  A.R. 69.  In addition,

25   both of Plaintiff's knees are "riddled with arthritis and pain," which causes difficulty sitting and

26   walking for long periods of time.  A.R. 58.  He has to stand up after sitting for 20 to 25 minutes,

27   and can stand for only 15 minutes at a time.  A.R. 61.

28       Plaintiff sees the doctor regularly and takes medication for pain, high blood pressure and

United States District Court
Northern District of California

United States District Court
Northern District of California

diabetes.  A.R. 58.  The medications are effective "at times."  A.R. 58.  Plaintiff has had several medical procedures that he testified were not helpful or effective, including surgery on his right knee, injections in both knees, three or four epidural injections in his back, and injections in his neck.  A.R. 59.  Plaintiff has used a cane every day since his 2011 knee surgery.  A.R. 60.

Plaintiff takes Prozac to treat depression.  A.R. 58-59.  His depression causes insomnia and mood swings, and he gets angry and frustrated about his pain and not being able to do the things he used to do.  A.R. 61, 65.  Although the medication helps him relax, he feels frustrated three or four days a week, and tries to stay in his room, away from everyone, lying in bed with his knees and head elevated and watching television.  A.R. 65, 66, 72.  Stress makes his pain symptoms worse.  A.R. 71-72.  He sees his mental health counselor, Dr. Houston, once per month for counseling.  A.R. 60.

Plaintiff testified that on a typical day, if he does not have to go anywhere, he spends the day in bed with his knees elevated and iced.  A.R. 62.  On an average day, he elevates his knees two to three times, for two hours at a time so that they do not get stiff and swollen.  A.R. 66, 67.  He uses ice packs on his knees throughout the day to numb the pain.  A.R. 67.  If he feels good, he gets up and helps his wife around the house for a short period of time.  A.R. 62.  He helps his wife prepare food, but must do so in stages because he cannot sit for long.  A.R. 62-63.  He is able to wash dishes for no more than ten minutes, and can sweep the floor for ten or fifteen minutes.  A.R. 63.  He is able to shower but cannot get into the bathtub.  His wife occasionally has to help him put his pants and socks on because he is unable to bend his knees.  A.R. 62.  Plaintiff attends church and visits his wife's family "once in a while."  A.R. 63.  His hobby is watching sports.  A.R. 63.

His car is currently inoperative.  Prior to its breaking down, he drove about every other day.  A.R. 47.  Family members currently drive him and his wife to the grocery store.  A.R. 63.  At the store, he uses an automatic battery operated wheelchair because he is unable to walk through large stores, and needs to be able to sit down while his wife is going through the aisles.  A.R. 64.

Plaintiff testified that he has a tremor in his right hand which causes his hand to shake when he lifts his fork to his mouth.  He also has problems opening up containers and bottles.  A.R.

69.  He believes that he would not be able to perform work on a computer or write for long periods of time because of the tremor.  A.R. 70.

### B.  Relevant Medical Evidence

#### 1.  Treating Physician Dr. Erickson Aquino

Treating physician Dr. Erickson Aquino submitted a Medical Assessment and Residual Functional Capacity assessment dated June 15, 2011.  A.R. 470-74.  Dr. Aquino noted that he treated Plaintiff for one year for cervical and lumbar radiculopathy, cervical and lumbar stenosis, and osteoarthritis for the knees, and that Plaintiff's complaints correlate with imaging findings. A.R. 470.  Plaintiff's treatment included prescription medications, physical therapy, referral to a spine clinic, back injections, and knee surgery.  A.R. 470.

Dr. Aquino opined that Plaintiff can stand, walk, and sit for 30 minutes at one time and four hours in an eight-hour day.  He can lift up to ten pounds frequently and 11 to 20 pounds occasionally, and is unable to do repetitive bending, stooping, or climbing.  A.R. 471.  He also opined that Plaintiff is unable to perform repetitive actions with his hands and arms.  A.R. 471. Dr. Aquino opined that Plaintiff would be absent from work five times per month or more, and would need to work reduced hours (six hours or less) at least 15 days per month.  Additionally, Plaintiff would need to take at least eight unscheduled extra breaks per eight-hour day, or every hour.  A.R. 472.

On March 6, 2012, Dr. Aquino completed a Work Status Report in which he placed Plaintiff on "modified activity" at work and at home from March 1, 2012 through August 31, 2012.  He opined that Plaintiff could stand, walk, sit, drive, bend at the waist, and squat/kneel "occasionally," defined as up to 25% of a shift, and lift, carry, push, or pull up to 10 pounds.  A.R. 971.  He also opined that Plaintiff is unable to twist his torso or spine, climb stairs or ladders, or use scaffolds/work at height.  A.R. 971.

Dr. Aquino completed a Supplemental Assessment on April 11, 2013 in which he opined that Plaintiff's condition had not changed since his June 2011 assessment.  A.R. 1114.  He further opined that Plaintiff is "unable to keep [a] 40 hrs work week in a competitive job."  A.R. 1114.

### 2.  Treating Physician Dr. Robert Gomez

In October 2009, Plaintiff began seeing orthopedic surgeon Dr. Robert Gomez for evaluation and treatment of "right upper extremity pain of about ten years duration" stemming from a 1999 workplace injury.  A.R. 665-66.  In August 2011, Dr. Gomez wrote that a 2008 MRI showed "severe cervical central canal stenosis at C3/4, C4/5, very severe at C5/6, moderate at C6/7, C2/3," and that Plaintiff was able to continue full duty with treatment, including anti-inflammatory medication and muscle relaxants.  A.R. 665.  However, Dr. Gomez noted that his symptoms had recently "degenerated further."  A.R. 665.  A March 2010 MRI showed deterioration, revealing "severe central spinal stenosis.  C2-C3, C3, C4-5 very severe central spinal stenosis C5-6 and moderate central spinal stenosis C6-7."  A.R. 494.  In June 2011, Dr. Gomez indicated that Plaintiff should be evaluated by a cervical spine surgeon because he was "past the epidural steroid stage."  A.R. 660.  The following month, Dr. Gomez noted that Plaintiff's right shoulder was stable but that his cervical spine "continues to be significantly painful, and that Plaintiff needed a new MRI due to his symptoms deteriorating.  A.R. 659, 660.  Specifically, Plaintiff's radicular upper extremity pain on the left and neck pain "continues to progress slowly over time."  A.R. 659.

In August 2011, Dr. Gomez noted that Plaintiff's pain "now is to the point where he needs chronic narcotics."  A.R. 661.  Dr. Gomez stated in February 2012 treatment notes that Plaintiff takes Naprosyn, Flexeril, and Vicodin on a regular basis, which "allow[] him to function at his current level."  He also stated that Plaintiff would "remain off work."  A.R. 656.

### 3.  Examining Physician Dr. Sigurd Berven

Dr. Sigurd Berven evaluated Plaintiff's "neck and bilateral arm symptoms" in December 2011 and February 2013 at Dr. Gomez's request.  A.R. 642-44.  Plaintiff's chief complaint was neck pain radiating to the trapezial region bilaterally, with occasional pain radiating down his arms and subjective weakness, especially on the right side.  A.R. 642.  Dr. Berven observed that Plaintiff had recently developed "what sounds like a resting tremor, which makes it difficult for him to write and feed himself."  A.R. 642.  Plaintiff's symptoms "are worse with sitting, standing and walking," and "[n]eck extension especially bothers him."  A.R. 642.

1     Dr. Berven reviewed a September 2008 MRI and diagnosed multilevel cervical stenosis,

2 and stated that it was "difficult to determine his primary pain generator." A.R. 643. He referred

3 Plaintiff to a neurologist for evaluation of his resting tremor and sought a new MRI to evaluate

4 any change in pathology. A.R. 643.

5     Dr. Berven conducted a follow-up visit with Plaintiff on February 4, 2013 to discuss

6 treatment options. Dr. Berven diagnosed cervical radiculopathy at C6 related to Plaintiff's neck

7 pain. A.R. 1110-12. Plaintiff informed Dr. Berven that he has "pain 'from head to toe.'" A.R.

8 1112. Dr. Berven noted that he was "concerned about the progression" of Plaintiff's symptoms.

9 Dr. Berven discussed operative and non-operative care options with Plaintiff, who stated he would

10 like to pursue non-operative care including physical therapy and epidural injections in the cervical

11 spine. A.R. 1112.

### 4.  Examining Physician Dr. Kara Flavin

13     Consultative examiner Dr. Kara Flavin, M.D., performed a comprehensive orthopedic

14 evaluation on May 28, 2011. A.R. 461-69. Plaintiff's chief complaints were neck pain, low back

15 pain, and bilateral knee pain. A.R. 461. Plaintiff reported he had had about 10-25 cervical

16 epidural steroid injections since 1999, but each injection helps with the pain for only two to three

17 weeks. A.R. 462. He has also had five to six injections in his lower back over the past year; these

18 too helped only "a little" in terms of pain relief. A.R. 462. Plaintiff rated the pain in his neck as

19 eight and a half out of ten, with it occasionally going to ten out of ten at the worst. He rated the

20 pain in his lower back as eight out of ten, which is worsened by lifting heavy grocery bags and

21 bending. A.R. 462. Pain medications and applying heat improves the pain in his neck and back.

22 A.R. 462. Plaintiff describes the pain in his knees as "stabbing and throbbing," and the pain

23 worsens with standing, walking, and prolonged sitting. It improves with elevation, application of

24 ice and heat, and pain medications. A.R. 463. He rates his knee pain as ten out of ten in both

25 knees. A.R. 463. Plaintiff is able to walk approximately one block before having to stop due to

26 pain, and uses a cane to walk. A.R. 463.

27     Dr. Flavin described Plaintiff as a morbidly obese male who walked in with an antalgic

28 gait, which improved throughout the examination. He had mild difficulty with tandem gait. A.R.

United States District Court
Northern District of California

United States District Court
Northern District of California

464, 465.  She noted that he walked with a cane but barely put pressure on it, and that he was able to don and doff his shoes and socks without any difficulty.  A.R. 464.  Plaintiff was also able to get on and off the exam table by himself and sat comfortably.  A.R. 464.

Dr. Flavin diagnosed Plaintiff with chronic cervical strain with possible cervical stenosis, bilateral knee osteoarthritis, and right lumbosacral facet arthropathy.  A.R. 467.  She opined that Plaintiff can stand and walk for up to four hours and sit for up to six hours.  He can lift and carry ten pounds occasionally and frequently, and should never climb, balance, stoop, kneel, crouch, or crawl.  He may frequently reach and has no limitations in handling, fingering, or feeling.  A.R. 467.

### 5.  Non-Examining State Agency Medical Consultants

M. Friedman, M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment in connection with the initial disability determination explanation on June 10, 2011.  A.R. 91-100.  After reviewing Plaintiff's medical records, Dr. Friedman opined that Plaintiff can frequently lift and/or carry ten pounds; can stand and/or walk with normal breaks for a total of four hours in an eight-hour workday; and can sit with normal breaks for a total of six hours in an eight-hour work day.  A.R. 97.  Dr. Friedman also opined that Plaintiff is unlimited in pushing and pulling, and can occasionally climb ramps or stairs; climb ladders/ropes/scaffolds; balance; stoop; kneel, crouch, and crawl.  A.R. 97.  Plaintiff has limited ability to reach in any direction, including overhead, and must avoid concentrated exposure to hazards such as heights and machinery.  A.R. 98.

I. Newton, M.D., a second state agency medical consultant, completed a Physical Residual Functional Capacity Assessment on March 28, 2012, and affirmed Dr. Friedman's opinion after reviewing Plaintiff's medical records.  A.R. 102-115.  A.R. 108, 111-13.

A third state agency medical consultant, Dr. Alicia V. Blando, completed a case analysis on September 18, 2012 and affirmed Dr. Newton's opinion.  A.R. 956-59.  Dr. Blando opined that although Plaintiff's cane is not medically necessary, he may use the cane to decrease the effects of pain and for long distances and uneven terrain.  A.R. 959.

### 6. Treating Physician Dr. Mitchell Houston

Plaintiff's treating psychologist, Dr. Mitchell Houston, completed a Psychiatric Assessment on September 19, 2012.  A.R. 962-64.  Dr. Houston indicated that he had been treating Plaintiff with psychotherapy and antidepressants since June 6, 2011 for major depression, recurrent.  A.R. 962, 963.

Dr. Houston observed that Plaintiff is "almost always in a depressed state," and has very low tolerance for stress.  A.R. 962.  He opined that Plaintiff is not capable of working in a competitive environment due to his psychiatric condition, describing Plaintiff's ongoing symptoms of depression, including depressed mood, fatigue, low energy, difficulty concentrating, and ability to be easily distracted.  Dr. Houston noted that he had observed and treated these symptoms for over one year but that Plaintiff "is only mildly improved," and opined that Plaintiff "is unable to work at this time."  A.R. 963.  Dr. Houston also opined that Plaintiff would be absent from work five times a month or more, could not sustain daily employment, and is incapable of working an eight-hour shift.  A.R. 964.

### 7. Examining Physician Dr. John Prosise

Consultative examining psychologist Dr. John Prosise interviewed Plaintiff on May 23, 2012.  A.R. 951-53.  Dr. Prosise noted that Plaintiff "seemed grudgingly compliant," but "brightened in response to interest and interaction" and responded cooperatively to prompts.  A.R. 951.

According to Plaintiff's wife, on a typical day, Plaintiff watches television and sleeps.  He avoids walking, standing, climbing, lifting, sitting, kneeling, bending, and pulling.  A.R. 951.  His wife indicated that Plaintiff is able to bathe, dress, buy food, do housekeeping, wash clothes, have visitors, and pay visits to others without assistance.  A.R. 951.  His wife "rejected" the following activities as "uncommon or beyond his capabilities": take medication, open mail, use a telephone, cook, use buses and BART, drive, read a newspaper, or use a bank account.  A.R. 951.  Dr. Prosise noted that "[d]iscussion indicated that his limited participation in several of the latter [activities] may represent matters of lifestyle and admittedly not fixed limitations of capability."  A.R. 952.

United States District Court
Northern District of California

1       According to Dr. Prosise, Plaintiff stated he is unable to work because of pain and

2   depression, and described neck, back, and knee pain.  A.R. 952.  Dr. Prosise diagnosed Plaintiff

3   with depressive disorder not otherwise specified and adjustment disorder with anxiety.  A.R. 952.

4       Dr. Prosise opined that Plaintiff is mildly impaired with respect to social interaction and

5   psychological adaptability.  A.R. 953.  He also opined that Plaintiff's ability to perform simple

6   instructions, simple tasks and decisions, complex instructions, and complex tasks and decisions is

7   unimpaired.  A.R. 953.

## IV.   STANDARD OF REVIEW

9       Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

10  Commissioner denying a claimant disability benefits.  "This court may set aside the

11  Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal

12  error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180

13  F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the

14  record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

15  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a

16  preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).

17  When performing this analysis, the court must "consider the entire record as a whole and may not

18  affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec.*

19  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

20      If the evidence reasonably could support two conclusions, the court "may not substitute its

21  judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

22  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

23  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

24  inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

25  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.   DISCUSSION

27      On appeal, Plaintiff contends that the ALJ erred (1) in weighing the medical opinions; (2)

28  in finding Plaintiff not credible; (3) in formulating Plaintiff's RFC; and (4) in concluding that

United States District Court
Northern District of California

11

1  Plaintiff could perform other work.  As discussed in detail below, the court concludes that the ALJ

2  erred in weighing the medical opinions and in finding Plaintiff not credible, and thus does not

3  consider Plaintiff's remaining arguments.

### A. The ALJ's Evaluation of the Medical Opinions

5  Plaintiff first argues that the ALJ erred in weighing the medical opinions.  Specifically, he

6  argues that the ALJ erred in giving reduced weight to the opinions of treating physicians Dr.

7  Aquino and Dr. Houston.

### 1. Legal Standard

9  Courts employ a hierarchy of deference to medical opinions based on the relation of the

10  doctor to the patient.  Namely, courts distinguish between three types of physicians: those who

11  treat the claimant ("treating physicians") and two categories of "nontreating physicians," those

12  who examine but do not treat the claimant ("examining physicians") and those who neither

13  examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821,

14  830 (9th Cir. 1996).  A treating physician's opinion is entitled to more weight than an examining

15  physician's opinion, and an examining physician's opinion is entitled to more weight than a non-

16  examining physician's opinion.  *Id.*

17  The Social Security Act tasks the ALJ with determining credibility of medical testimony

18  and resolving conflicting evidence and ambiguities.  *Reddick*, 157 F.3d at 722.  A treating

19  physician's opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v.*

20  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an

21  uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*,

22  81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection

23  of examining psychologist's functional assessment which conflicted with his own written report

24  and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188.  If another

25  doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons"

26  supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at

27  830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and

28  conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*,

United States District Court
Northern District of California

United States District Court
Northern District of California

157 F.3d at 725 (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant).  An opinion that is more consistent with the record as a whole generally carries more persuasiveness.  *See* 20 C.F.R. § 416.927(c)(4).

### 2.  Analysis

#### a.      Dr. Aquino's Opinion

Dr. Aquino is one of Plaintiff's treating physicians.  The record contains three assessments by Dr. Aquino of Plaintiff's functional abilities.  In the first, dated June 15, 2011, Dr. Aquino noted that he had treated Plaintiff for one year for cervical and lumbar radiculopathy, cervical and lumbar stenosis, and osteoarthritis of the knees.  He opined that Plaintiff can only stand, walk, and sit for 30 minutes at one time and four hours in an eight-hour day and is unable to perform repetitive actions with his hands and arms.  He also concluded that Plaintiff would be absent from work five times per month or more and would need to work reduced hours at least 15 days per month, and that Plaintiff would need to take at least eight extra breaks per eight-hour day.  Nearly two years later, on April 11, 2013, Dr. Aquino opined that Plaintiff's condition had not changed since his June 2011 assessment, and opined that Plaintiff is unable to keep a 40-hour workweek in a competitive job.  The ALJ gave these two opinions reduced weight, noting that "an opinion by a medical source that a claimant is disabled or unable to work does not mean that a claimant is disabled."  A.R. 29.  She also stated that the opinions "are internally inconsistent, as well as not

1    consistent with the record as a whole, and are not supported by the objective medical evidence."

2    A.R. 29.

3        The ALJ also discussed a third opinion by Dr. Aquino, a March 6, 2012 "Work Status

4    Report" in which he placed Plaintiff on "modified activity" at work and at home from March 1,

5    2012 through August 31, 2012.  Dr. Aquino opined that Plaintiff could stand, walk, sit, drive, bend

6    at the waist, and squat/kneel occasionally, or up to 25% of a shift.  The ALJ noted that although

7    the opinion "does not give specific work related limitations, other than the ability to stand, walk,

8    sit, drive, bend, squat, and kneel occasionally, the majority of the opinion is nonetheless consistent

9    with the record as a whole, as well as with [Plaintiff's] activities of daily living," and gave the

10    opinion "significant weight."  A.R. 29.

11        Plaintiff argues that the ALJ committed legal error because she did not give a legally

12    sufficient explanation for giving reduced weight to Dr. Aquino's June 2011 and April 2013

13    opinions.  Dr. Aquino's opinion was contradicted by the opinions of state agency medical

14    consultants Drs. Friedman, Newton, and Blando, who reviewed Plaintiff's medical records and

15    concluded that Plaintiff can stand and/or walk with normal breaks for four hours in an eight-hour

16    workday and sit with normal breaks for six hours in an eight-hour workday.  Dr. Aquino's opinion

17    was also contradicted by the opinion of consultative examiner Dr. Flavin, who examined Plaintiff

18    in May 2011 and concluded that Plaintiff can stand and walk for up to four hours and sit for up to

19    six hours, and has no limitations in handling, fingering, or feeling.  Since Dr. Aquino's opinions

20    were contradicted, the ALJ was required to provide "specific and legitimate" reasons supported by

21    substantial evidence to reject portions of those opinions.  *Lester*, 81 F.3d at 830-31.

22        The court finds that the ALJ did not provide specific and legitimate reasons supported by

23    substantial evidence to discount the opinions of treating physician Dr. Aquino.  The first reason

24    the ALJ offered to discount Dr. Aquino's June 2011 and April 2013 opinions was that although

25    Dr. Aquino is a treating physician, "an opinion by a medical source that a claimant is disabled or

26    unable to work does not mean that the claimant is disabled."  A.R. 29.  The Ninth Circuit has

27    made clear that the fact that an opinion is "on an issue reserved to the Commissioner"—i.e., the

28    ultimate disability determination—"is not by itself a reason for rejecting that opinion."  *Esparza v.*

United States District Court
Northern District of California

1  *Colvin*, ---Fed. Appx.---, 2015 WL 7567408, at *2 (9th Cir. Nov. 25, 2015) (citations omitted).

2         The remaining reasons the ALJ gave for discounting Dr. Aquino's June 2011 and April

3  2013 opinions lack the specificity required by *Lester*.  The ALJ stated that the opinions in question

4  "are internally inconsistent," "not consistent with the record as a whole," and "not supported by

5  the objective medical evidence."  While these reasons could justify a decision not to give the

6  treating physician's opinion controlling weight, *see* 20 C.F. R. §§ 404.1527(c)(2), or could

7  constitute legitimate reasons for rejecting a medical opinion, the ALJ did not identify which of Dr.

8  Aquino's opinions are contradictory, how they are inconsistent with the record as a whole, and

9  which objective medical evidence does not support the opinions.  "The ALJ is responsible for

10  resolving conflicts in medical testimony, and resolving ambiguity." *Morgan v. Comm'r of Soc.*

11  *Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal citation omitted).  "Determining whether

12  inconsistencies are material (or in fact inconsistencies at all) . . . falls within this responsibility."

13  *Id.*  If an ALJ determines that a treating physician's opinion is inconsistent with the medical

14  record, she must directly identify and discuss those records.  *See Cotton v. Bowen*, 799 F.2d 1403,

15  1408 (9th Cir. 1986).  Here, the ALJ failed to identify and discuss such records or explain why

16  other purportedly inconsistent findings are entitled to more weight than Dr. Aquino's, instead

17  stating only that Dr. Aquino's opinions were "not consistent with the record as a whole."  A.R. 29.

18  This is insufficient.

19         The remaining reason given by the ALJ for discounting Dr. Aquino's opinions is also

20  unpersuasive.  The ALJ stated that his opinions are "not supported by the objective medical

21  evidence."  As the Ninth Circuit has explained, simply stating that "medical opinions are not

22  supported by sufficient objective findings" is insufficiently specific.  *Embrey v. Brown*, 849 F.2d

23  418, 421 (9th Cir. 1988).  "The ALJ must do more than offer his conclusions.  He [or she] must set

24  forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* at

25  421-22.  Thus, the ALJ's reasoning is unpersuasive because she failed to specifically identify what

26  objective medical evidence did not support Dr. Aquino's opinions, let alone provide her own

27  interpretation of the evidence.  Further, the ALJ apparently did not consider any of the factors

28  relevant to determining which medical opinion(s) should control, such as the treatment

United States District Court
Northern District of California

relationship, frequency of examination, nature and extent of treatment relationship, evidence

supporting the opinion, and the doctor's specialization. *See* 20 C.F.R. § 404.1527(c)(2)-(c)(6).

Had the ALJ engaged in this analysis, the fact that Dr. Aquino had treated Plaintiff for three years

and was familiar with the wide range of treatments Plaintiff had undergone, including knee

surgery, medications, physical therapy, referral to a spine clinic, and injections, as well as his

familiarity with Plaintiff's mental and physical impairments, may have tipped the scale in favor of

giving controlling weight to Dr. Aquino's June 2011 and April 2013 opinions.

       The Commissioner offers her own arguments to support the ALJ's conclusions that Dr.

Aquino's June 2011 and April 2013 opinions are internally inconsistent, not consistent with the

record as a whole, and not supported by the objective medical evidence. For example, the

Commissioner argues that Dr. Aquino's March 2012 Work Status Report, in which he opined that

Plaintiff could be on "modified duty" at work and at home, was inconsistent with his April 2013

statement that Plaintiff's condition had not changed since his June 2011 assessment. While this is

not an unreasonable interpretation, the ALJ did not offer this interpretation as the basis for her

statement that Dr. Aquino's opinions were "internally inconsistent." In fact, the ALJ discussed the

March 2012 opinion separately from the June 2011 and April 2013 opinions. *See* A.R. 29.

"Long-standing principles of administrative law require [this court] to review the ALJ's decision

based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that

attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.

Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted). Accordingly, the court finds

that the ALJ committed legal error with respect to evaluating Dr. Aquino's June 2011 and April

2013 opinions.

### b.     Dr. Houston's Opinion

       Dr. Houston, Plaintiff's treating psychologist, completed a Psychiatric Assessment on

September 19, 2012 in which he opined that Plaintiff is not "capable of working in a competitive

environment," and that "due to [Plaintiff's] psychiatric condition he is unable to function at an

expected level." In response to the question, "do you believe it is reasonable to infer that the

patient is capable of sustaining competitive work on a regular and reliable basis," Dr. Houston

United States District Court
Northern District of California

1    listed Plaintiff's symptoms of depression, including "ongoing depressed mood, fatigue, low

2    energy, difficulty concentrating/easily distracted," and stated his opinion that Plaintiff is unable to

3    work at this time.  The ALJ gave Dr. Houston's opinion reduced weight, apparently in favor of Dr.

4    Prosise's opinion that Plaintiff can understand, remember, and carry out simple instructions with

5    adequate concentration and judgment; can interact adequately in the workplace; has the ability to

6    adjust adequately to common workplace requirements, hazards, and changes of routine.  The ALJ

7    gave this portion of Dr. Prosise's opinion significant weight.  A.R. 30.  Since Dr. Prosise's opinion

8    contradicts that of Dr. Houston, the ALJ was required to provide "specific and legitimate" reasons

9    supported by substantial evidence to give reduced weight to Dr. Houston's opinion.

10           The court finds that the ALJ committed legal error in giving reduced weight to Dr.

11    Houston's opinion about the disabling effects of Plaintiff's depression.  First, in discounting Dr.

12    Houston's opinion, the ALJ noted that "an opinion by a medical source that a claimant is disabled

13    or unable to work does not mean that a claimant is disabled."  A.R. 30.  As previously noted, the

14    fact that an opinion is "on an issue reserved to the Commissioner is not by itself a reason for

15    rejecting that opinion."  *Esparza*, ---Fed. Appx.---, 2015 WL 7567408, at *2 (citations omitted).

16    The remaining reasons to discount Dr. Houston's opinion are not supported by substantial

17    evidence.  The ALJ stated that Dr. Houston's opinion "is inconsistent with the record as a whole,

18    which indicates that the claimant has received mostly medication refills, with little change in

19    treatment, as well as minimal counseling or therapy."  A.R. 30.  The basis for the ALJ's

20    description of Plaintiff's treatment for depression as "minimal" is not clear.  The record shows that

21    Dr. Houston has treated Plaintiff for depression since June 2011, and contains treatment notes

22    from Plaintiff's monthly therapy sessions with Dr. Houston from August 2011 through November

23    2012.  *See* A.R. 527-28, 606-07, 627-28, 800-01, 836-37, 849-50, 862, 896-97, 944-45, 1022-23,

24    1042-43, 1049-50, 1055-56, 1068-69, 1072-73.  Although the record contains no treatment notes

25    from Dr. Houston after November 2012, Plaintiff testified at the April 30, 2013 hearing that he

26    continues to see Dr. Houston once per month for counseling.  A.R. 60.  Substantial evidence does

27    not support the ALJ's determination that regular, monthly therapy sessions over the course of two

28

United States District Court
Northern District of California

17

1  years, along with medication, including anti-depressants Prozac and Buproprion,[3] constitutes only

2  "minimal counseling or therapy."

3          Moreover, Dr. Houston's treatment notes are consistent with his September 2012

4  assessment that after over one year of treatment, Plaintiff was only "mildly improved."  Plaintiff

5  consistently reported his mood as "angry, frustrated, discouraged" or "sad, frustrated,

6  discouraged."  A.R. 627-28 (10/3/11 notes), 800-01 (1/26/12 notes), 1055-56 (9/24/12 notes).  He

7  also reported to Dr. Houston on multiple visits that he felt "overwhelmed with all the stress he is

8  dealing with."  A.R. 896-97 (2/13/12 notes), 944-45 (4/24/12 notes), 1042-43 (8/7/12 notes).  In

9  April 2012, Plaintiff reported that he had gotten married and was "happy about that," but also

10 stated he was in a lot of discomfort, felt overwhelmed, and that "[d]aily survival is a challenge."

11 A.R. 944-45.  His depression appeared to worsen in August 2012.  That month, Plaintiff had two

12 sessions with Dr. Houston.  After the second, Dr. Houston noted that Plaintiff's "[m]ood remains

13 chronically down as is energy and motivation," and that Plaintiff was "[d]iscouraged and

14 sometimes hopeless."  A.R. 1048-50.  This continued through November 12, 2012, the last

15 treatment notes in the record, when Plaintiff reported that his pain level has been "high" but that

16 he is "very afraid" of surgery, and that he was discouraged and hopeless.  A.R. 1072-73.

17         The ALJ provided no other reasons to discount Dr. Houston's opinion.  The court

18 concludes that the reasons stated in the opinion were not specific and legitimate reasons supported

19 by substantial evidence.

20     **B.  The ALJ's Credibility Determination**

21         Plaintiff next challenges the ALJ's determination that he was not fully credible.

22         **1.  Legal Standard**

23         In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

24 resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

25

26 _____

27 [3] In June 2013, Plaintiff requested that his primary care physician, Dr. Aquino, change Plaintiff's
   anti-depressant, since Prozac was not helping with his mood.  A.R. 1117; *see also* A.R. 1128
   (10/22/13 treatment note stating Plaintiff's depression is treated with new medication,
28 Buproprion).

United States District Court
Northern District of California

ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (rejecting Commissioner's challenge to "specific, clear, and convincing" legal standard for rejecting

United States District Court
Northern District of California

1   claimant's testimony in the absence of malingering).

2          **2.  Analysis**

3          The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

4   expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

5   intensity, persistence and limiting effects of these symptoms are not entirely credible for the

6   reasons explained in this decision."  A.R. 27.  The ALJ did not conclude that Plaintiff was a

7   malingerer.

8          The only specific reason the ALJ gave for not fully crediting Plaintiff's testimony was

9   Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing."  The

10  ALJ continued, "[i]t is emphasized that this observation is only one among many being relied on

11  in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's

12  residual functional capacity."  A.R. 27.  The ALJ never actually identified which observations she

13  relied upon in discounting Plaintiff's credibility.  This constitutes legal error.  Because the ALJ did

14  not conclude that Plaintiff was a malingerer, she was required to provide "clear and convincing"

15  reasons for rejecting his testimony.  While an ALJ may consider "ordinary techniques of

16  credibility evaluation," *Smolen*, 80 F.3d at 1284, here, the ALJ did not specify how Plaintiff's

17  appearance and demeanor at the hearing was "generally unpersuasive."

18         The Ninth Circuit recently emphasized that "[a] finding that a claimant's testimony is not

19  credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator

20  rejected the claimant's testimony on permissible grounds . . . '" *Brown-Hunter v. Colvin*, 806 F.3d

21  487, 493 (9th Cir. 2015) (citation omitted).   Here, the ALJ made a conclusory statement about

22  Plaintiff's "unpersuasive appearance and demeanor," before referencing other unspecified

23  observations that supported her decision to discount Plaintiff's credibility.  This is insufficient for

24  meaningful review.  The Ninth Circuit has made clear that a reviewing court "may not take a

25  general finding [about a claimant's credibility] and comb the administrative record to find specific

26  conflicts." *Id.* at 494.

27         The Commissioner disputes the "clear and convincing" standard of review, arguing that the

28  ALJ need not provide "especially compelling or convincing" reasons to reject a claimant's

United States District Court
Northern District of California

United States District Court
Northern District of California

testimony.  This argument is without merit.  The Ninth Circuit recently reaffirmed the "specific, clear and convincing" standard in *Brown-Hunter*, 806 F.3d at 492, and this court is bound by Ninth Circuit precedent.  The Commissioner also offers a host of reasons why Plaintiff was not credible, including the purported "routine and conservative treatment" Plaintiff received and Dr. Flavin's observations.  None of these reasons were identified by the ALJ as the basis for rejecting Plaintiff testimony.  As the Ninth Circuit stated in *Brown-Hunter*, "the credibility determination is exclusively the ALJ's to make, and ours only to review.  As we have long held, "[W]e are constrained to *review* the reasons the *ALJ* asserts."  806 F.3d at 494 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  The ALJ committed error in discounting Plaintiff's credibility.

### C.  Remand for Payment of Benefits

Plaintiff asks the court to issue an order for payment of benefits for the period January 21, 2011 through June 14, 2013, rather than remand the case to the ALJ to conduct further proceedings.

A court may remand a disability case for further proceedings "if enhancement of the record would be useful."  It may only remand for benefits, on the other hand, "where the record has been fully developed and further administrative proceedings would serve no useful purpose."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  In determining whether to remand for benefits, the Ninth Circuit has devised a "three-part credit-as-true standard."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  Each part of the standard must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*.  A court is required to remand for further development of a disability case when, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Id*. at 1021.

United States District Court
Northern District of California

Here, the record has been fully developed, and there is no indication that further administrative proceedings would serve a useful purpose.  As discussed above, the ALJ did not provide legally sufficient reasons for rejecting the opinions of Drs. Aquino and Houston and Plaintiff's testimony about the effect of his impairments on his functioning.  If this evidence were credited, the ALJ would be required to find Plaintiff disabled.  Dr. Aquino opined in June 2011 that Plaintiff would be absent from work five times per month or more, would need to take at least eight unscheduled extra breaks per eight-hour day, and would need to work six hours or less at least 15 days per month.  He reaffirmed this opinion in April 2013.  Dr. Houston opined that Plaintiff would be absent from work five times per month or more and could not sustain daily employment.  At the hearing, Plaintiff's representative asked the vocational expert whether a claimant who needed hourly breaks would be able to work.  The vocational expert responded that the individual "would not be able to maintain employment."  A.R. 80.  The vocational expert also testified that if a person needed to work a six-hour day at least 15 times in a month, "six hours would be short of a full-time day, so would not be allowed."  A.R. 88.  Plaintiff meets all three conditions of the credit-as-true rule, and the court is satisfied that there is not a "serious doubt that [Plaintiff] is, in fact, disabled," *Garrison*, 759 F.3d at 1021.  The court therefore remands the case to the Commissioner to award Plaintiff his disability benefits from January 21, 2011 through June 14, 2013.

## VI.   CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was not supported by substantial evidence in the record.  Accordingly, the court remands this case for payment of benefits.

**IT IS SO ORDERED.**

Dated: March 22, 2016



Donna M. Ryu
United States Magistrate Judge